Henry G. HOORNWEG, Petitioner,

v.

Harold J. SMITH, Superintendent, Respondent.

No. CIV–78–443.

United States District Court,
W. D. New York.

Jan. 9, 1981.

Paul M. Michalek, Lackawanna, N. Y., for petitioner.

Kenneth E. Graber, Asst. Atty. Gen., State of N. Y., Buffalo, N. Y., for respondent.

ELFVIN, District Judge.

Petitioner, currently incarcerated at Attica (N.Y.) Correctional Facility, seeks his release upon a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a plea of guilty to rape in the first degree before Judge George F. Roberts of the New York Supreme Court, County of New York, he was sentenced to an indeterminate prison term of five to fifteen years.

Petitioner asserts as the sole ground for relief [1] that his guilty plea was secured in violation of his constitutional right to due process of law. Specifically, he alleges that the trial court unconstitutionally accepted his guilty plea without the benefit of a competency determination.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 1974, prior to the challenged conviction in the instant case, petitioner was indicted for rape in the first degree and possession of a deadly weapon. Pursuant to Article 730 of New York's Criminal Procedure Law he was examined by two psychiatrists who concluded that he was competent to stand trial. He subsequently pleaded not guilty to the charges. Thereafter, but before he was convicted by his guilty plea to the 1974 indictment, he

---

1. Hoornweg's *pro se* petition also raises two additional grounds for relief: coerced guilty plea and incompetent trial counsel. However, said claims are not asserted in Hoornweg's brief submitted by his assigned counsel in this proceeding. Furthermore, as respondent accurately points out, petitioner has not exhausted his state remedies with respect to such claims.

To the extent, then, that these two claims remain before this court, they are hereby ORDERED dismissed for failure to exhaust state remedies. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Johnson v. Metz*, 609 F.2d 1052 (2d Cir. 1979); 28 U.S.C. §§ 2254(c), (d).

was indicted for similar crimes April 3, 1975 and September 22, 1975.

On September 18, 1975 Judge Roberts ordered an Article 730 psychiatric evaluation of petitioner to determine his capacity to stand trial relative to the April 3, 1975 indictment. Such examination never took place. Instead, on October 3, 1975, petitioner pleaded guilty to the rape charge of August 1974 in satisfaction of all charges against him contained in the three indictments. Judge Roberts accepted his guilty plea and sentenced him to the aforesaid prison term.

Petitioner's conviction was unanimously affirmed by the Appellate Division of the Supreme Court, First Department, January 10, 1978. Leave to appeal to the Court of Appeals was thereafter denied.

## EXHAUSTION OF STATE REMEDIES

■ Before reaching the substantive issues of this case, it must be determined whether petitioner has exhausted his state remedies pursuant to 28 U.S.C. §§ 2254(b) & (c). That a habeas corpus petitioner must first fairly present his federal constitutional claims to the state courts before he may receive federal relief is firmly settled law. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Johnson v. Metz*, 609 F.2d 1052, 1055 (2d Cir. 1979). Respondent contends that petitioner has inexcusably failed to satisfy his exhaustion obligation in that his failure to move the trial court to vacate his guilty plea deprived the New York appellate courts of jurisdiction over his competency/due process claim. Thus, he argues, this court is deprived of the power to review such claim.

■ Under certain circumstances, unjustifiable failure to raise constitutional claims at trial may preclude a federal court's review of such claims. *See, e. g., Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Such circumstances, however, do not exist in the matter at hand. Regardless of New York's procedural rules governing contemporaneous objections, no such objection is necessary to raise the issue of a defendant's competency on appeal. *People v. Armlin*, 37 N.Y.2d 167, 172, 371

N.Y.S.2d 691, 696, 332 N.E.2d 870 (1975). Furthermore, petitioner's claim of a deprivation of due process for failure to receive a competency determination was properly raised in federal constitutional terms on appeal. For these reasons, said issue is validly before this court for resolution.

## DENIAL OF DUE PROCESS CLAIM

Petitioner's habeas corpus claim rests on the trial judge's failure to obtain an evaluation of his competency before accepting his guilty plea. He asserts that the court's decision to order a psychiatric examination pursuant to Article 730, which examination never took place, demonstrates the judge's doubts about petitioner's capacity to stand trial. Under these circumstances, he submits, his constitutional due process rights were violated inasmuch as he was entitled to "a full and impartial determination of his mental capacity" once the psychiatric examination was ordered. *People v. Armlin, supra.*

■ It may well be true, as petitioner maintains, that New York law does not permit a trial judge to accept a defendant's guilty plea until a previously-ordered Article 730 competency determination has been furnished. *People v. Armlin, supra.* Noncompliance with state law, however, does not of itself sanction the conferral of the requested relief. A federal court, petitioned for habeas corpus relief, must look only to whether the actions complained of deprived the petitioner of his fundamental constitutional rights. *Wright v. Smith*, 569 F.2d 1188, 1191–92, 1192 n.7 (2d Cir. 1978); *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974); *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975).

■ The Constitution demands that before a guilty plea can be accepted, a trial judge must be fully satisfied that the plea is knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea cannot be knowing or voluntary unless the defendant is competent to understand the nature of the

charge, his constitutional rights and the scope of the penalty provided by law. *Boykin v. Alabama, id.*, at 243–44, 89 S.Ct. at 1712; *Saddler v. United States*, 531 F.2d 83, 85 (1976).

*Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 148 (1966), established, and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), elaborated the due process safeguards with respect to a criminal defendant's competency to stand trial. Together, these cases hold that a trial court must inquire further into a defendant's competency when there is reasonable cause to believe that the defendant is incompetent. *Drope v. Missouri, supra*, at 174–75, 180, 95 S.Ct. at 905, 908; *Riccardi v. United States*, 428 F.Supp. 1059, 1063–64 n.4 (E.D.N.Y.), *aff'd*, 573 F.2d 1294 (2d Cir. 1977). Relevant factors which may raise such cause include a defendant's irrational behavior, his demeanor in court and any prior medical opinion on his competence. *Drope v. Missouri, supra*, 420 U.S. at 180, 95 S.Ct. at 908.

█ In the case at bar, neither the pleadings nor the state court records betray any such factors which should have caused the trial judge to suspect Hoornweg's competency.[2] There is no intimation that petitioner's behavior, other than the commission of the crimes for which he was convicted, was irrational, erratic or otherwise out of the ordinary. His defense attorney proffered no facts to suggest his client's mental instability or incompetence, past or present. Although curt, petitioner's replies at his plea and sentence hearings were coherent, consistent and directly responsive to Judge Roberts's close interrogation. No hesitation or lack of comprehension by petitioner is manifested in the records. On the contrary, the transcripts strongly reveal a lucid, rational man who has considered his situation, weighed his options and knowingly and voluntarily accepted the consequences of his guilty plea.

Similarly, no facts extraneous to the state court records are alleged to show that petitioner's calm and coherent courtroom demeanor was merely an exception to behavior which might otherwise have engendered doubts as to his competency. Unlike situations in which competency hearings have been found to be unconstitutionally omitted—*e. g., Pate v. Robinson, supra* (defendant had long history of disturbed and paranoid behavior and recently attempted suicide); *Wojtowicz v. United States*, 550 F.2d 786 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2938, 53 L.Ed.2d 1071 (1977) (defendant attempted drug overdose and wrist-slashing the morning of his sentence, and claimed that he did not understand the proceedings); *Saddler v. United States, supra* (judge aware of defendant's history of mental illness, repeated hospitalizations, attempted suicide, and present incoherence)— no representation is made that petitioner was suicidal, under heavy medication, addicted to drugs, of subnormal intelligence, subject to memory lapses or otherwise unable to comprehend his attorney's advice and his situation. In short, petitioner raises no facts which would tend to cast doubt upon his competency at the time of his plea.

The conspicuous absence of relevant factual assertions notwithstanding, petitioner points to both Judge Roberts's Article 730 order and his remarks about the defendant's apparent need for psychiatric help as indications that the judge harbored doubts about his competence. Whatever else they may imply, however, the judge's order and comments do not demonstrate convincingly that he had sufficient cause to believe that petitioner was incompetent, thereby activating the protections of *Pate v. Robinson.* As respondent notes, Judge Roberts's order was not necessarily *sua sponte*; it may well have been pursuant to a defense motion.

---

**2.** Indeed, petitioner peremptorily disavows any such assertion of his incompetency. Rather, he states only that he *might* have been incompetent when he pleaded guilty and that such possibility *per se* triggers the requisite constitutional protections. In light of the *Drope* criteria, more than a mere unsubstantiated possibility must be averred to sustain a constitutional claim. *See, Wojtowicz v. United States*, 550 F.2d 786, 790 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2938, 53 L.Ed.2d 1071 (1977).

Alternatively, he may have issued such order prior to his awareness of the previous psychiatric examinations.

Furthermore, to the extent that the judge entertained reservations about petitioner's mental health, such concern is not equatable with doubts about the petitioner's competence. Judge Roberts's remarks focused not on petitioner's mental capacity to stand trial or plead, but rather on his inability to control his abnormally violent pattern of sexual behavior. Sentence Transcript, pp. 9–10. Without more, such statements do not sufficiently manifest any indicia, much less any *Drope v. Missouri* criteria, which would mandate a constitutionally-sufficient competency hearing.

Assuming *arguendo* that such factors were present, however, I am far from persuaded that petitioner was deprived of any of his constitutional rights. After petitioner's initial indictments in 1974, Judge Irving Lang had ordered an Article 730 psychiatric examination to determine petitioner's competency to stand trial.[3] Two psychiatrists found him to be alert, mentally stable, well-oriented to his situation, and competent without reservation. Exhibit B, Petitioner's Brief. Although no similar Article 730 evaluation was conducted following petitioner's 1975 indictments, there is no evidence that his mental state changed perceptibly, if at all, between his indictments. As such, it cannot be said that the passage of one year vitiates the value of the August 1974 competency evaluations with respect to a consideration of whether petitioner's rights were breached in 1975. *See, United States ex rel. Curtis v. Zelker, supra,* at 1100.

It is not entirely clear that Judge Roberts had the 1974 psychiatric reports before him when he accepted petitioner's guilty plea. Nonetheless, by the time of the sentencing Judge Roberts had thoroughly reviewed several psychiatric evaluations of the petitioner. The latter's defense attorney acknowledged as much at the hearing:

[Defense Counsel]: "Your Honor, there is no doubt that your Honor has a full probation report, psychiatric work-up and reports not only from the doctors of the Probation Department but also from Dr. Daniel Kazreil (phonetic), a psychiatrist who examined defendant." (Sentencing Transcript, p. 5.)

The judge also expressly referred to several psychiatric reports as he addressed petitioner during sentencing:

[The Court]: "Mr. Hoornweg, I have a most complete sentence report from the Probation Department. It incorporates several examinations, psychiatric examinations that were conducted towards sentencing, towards pre-pleading." (*Id.,* at 9.)

Inferentially, any doubts Judge Roberts may have had about petitioner's competency prior to his guilty plea were dispelled by the extensive psychiatric information before him at the sentencing.

In a case comparable to the instant one, the United States Court of Appeals for the Second Circuit held that the failure of the state trial judge to provide for additional psychiatric examinations prior to accepting a guilty plea did not violate the defendant's rights. *United States ex rel. Curtis v. Zelker, supra* (at footnote 3). The defendant in that case had been examined and adjudged competent to stand trial three months before he had changed his plea to guilty. Taking into account that defendant's lucid behavior at his plea hearing, his defense lawyer's opinion of his competence and his mental history, the court ruled that no further competency inquiry was constitutionally-required. *Id.,* 1099, 1100. *See, also, Riccardi v. United States, supra,* at 1065–67 (trial court's failure to obtain pre-trial competency determination does not justify re-

---

**3.** Such an evaluation comports fully with constitutional due process standards for the determination of one's competency. *See, Drope v. Missouri, supra,* 420 U.S. at 172–73, 95 S.Ct. at 904; *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1100 (2d Cir. 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); *United States ex rel. Evans v. LaVallee,* 446 F.2d 782, 785–86 (2d Cir. 1971), *cert. denied,* 404 U.S. 1020, 92 S.Ct. 691, 30 L.Ed.2d 668 (1972).

lief pursuant to 28 U.S.C. § 2255 where there were no allegations or suggestions of a defendant's incompetence). *Accord, McNamara v. Riddle,* 563 F.2d 125 (4th Cir. 1977). Here, where petitioner was determined competent to stand trial by at least two psychiatrists, and where such determinations remained uncontradicted by further pre-sentence psychiatric examinations, there is no question that his due process rights were more than adequately observed.

In sum, the evidence before this court is entirely devoid of any indication that Judge Roberts's failure to obtain the Article 730 competency determination prior to accepting the guilty plea infringed upon any of petitioner's federal constitutional rights. It is therefore hereby

ORDERED that petitioner's application for habeas corpus relief is denied.